UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

**CAROL S. MEALS**,

        Plaintiff,

        v.

**COMMISSIONER SOCIAL SECURITY ADMINISTRATION**,

        Defendant.

Civil Case No. 3:14-CV-00678-KI

OPINION AND ORDER

    Robyn M. Rebers
    Robyn M. Rebers LLC
    P. O. Box 3530
    Wilsonville, Oregon  97070

        Attorney for Plaintiff

    S. Amanda Marshall
    United States Attorney
    District of Oregon

Page 1 - OPINION AND ORDER

Ronald K. Silver
Assistant United States Attorney
1000 SW Third Avenue, Suite 600
Portland, Oregon  97204-2902

Lisa Goldoftas
Social Security Administration
Office of General Counsel
701 Fifth Avenue, Suite 2900
Seattle, Washington  98104

       Attorneys for Defendant

KING, Judge:

Plaintiff Carol S. Meals brings this action pursuant to section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner denying plaintiff's application for disability insurance benefits ("DIB") and supplemental security income benefits ("SSI").  I affirm the decision of the Commissioner.

## DISABILITY ANALYSIS

The Social Security Act (the "Act") provides for payment of disability insurance benefits to people who have contributed to the Social Security program and who suffer from a physical or mental disability.  42 U.S.C. § 423(a)(1).  In addition, under the Act, supplemental security income benefits may be available to individuals who are age 65 or over, blind, or disabled, but who do not have insured status under the Act.  42 U.S.C. § 1382(a).

The claimant must demonstrate an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to cause death or to last for a continuous period of at least twelve months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  An individual will be determined to be disabled only if his

physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for either DIB or SSI due to disability. The evaluation is carried out by the Administrative Law Judge ("ALJ"). The claimant has the burden of proof on the first four steps. Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007); 20 C.F.R. §§ 404.1520 and 416.920. First, the ALJ determines whether the claimant is engaged in "substantial gainful activity." If the claimant is engaged in such activity, disability benefits are denied. Otherwise, the ALJ proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments. A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c)), 416.920(c)). If the claimant does not have a severe impairment or combination of impairments, disability benefits are denied.

If the impairment is severe, the ALJ proceeds to the third step to determine whether the impairment is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 416.920(d). If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is presumed to be disabling, the ALJ proceeds to the fourth step to determine whether the impairment prevents the claimant from performing work which the claimant performed in the past. If the claimant is able

to perform work she performed in the past, the ALJ makes a finding of "not disabled" and disability benefits are denied.  20 C.F.R. §§ 404.1520(e), 416.920(e).

If the claimant is unable to perform work performed in the past, the ALJ proceeds to the fifth and final step to determine if the claimant can perform other work in the national economy in light of his age, education, and work experience.  The burden shifts to the Commissioner to show what gainful work activities are within the claimant's capabilities.  Parra, 481 F.3d at 746.  The claimant is entitled to disability benefits only if he is unable to perform other work.  20 C.F.R. §§ 404.1520(f), 416.920(f).

## STANDARD OF REVIEW

The court must affirm a denial of benefits if the denial is supported by substantial evidence and is based on correct legal standards.  Molina v. Astrue, 674 F.3d 1104, 1110 (9th Cir. 2012).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" and is more than a "mere scintilla" of the evidence but less than a preponderance.  Id. (internal quotation omitted).  The court must uphold the ALJ's findings if they "are supported by inferences reasonably drawn from the record[,]" even if the evidence is susceptible to multiple rational interpretations.  Id.

## THE ALJ'S DECISION

The ALJ found Meals has severe impairments of degenerative disc disease of the lumbar spine, a history of non-obstructing nephrolithiasis;[1] a history of total vaginal hysterectomy, right

---

[1] Kidney stones.  http://www.medicinenet.com/script/main/art.asp?articlekey=6806 (last visited Mar. 23, 2015).

Page 4 - OPINION AND ORDER

salpingo-oophorectomy, and rectocele and cystocele repairs with complications;[2] obesity; a history of non-cardiac chest pain; migraine headaches; and hyperglycemia.  The ALJ also found that these impairments, either singly or in combination, are not severe enough to meet or medically equal the requirements of any of the impairments listed in 20 C.F.R. § 404, Subpart P, Appendix 1.  After reviewing the record, the ALJ found Meals has the residual functional capacity to perform light work; lift and/or carry up to 20 pounds occasionally and 10 pounds frequently; sit, walk, and/or stand for up to six hours in an eight-hour work day with normal breaks; is limited to occasional climbing of ramps and/or stairs but can never climb ladders, ropes, or scaffolds; must avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation; and must avoid workplace hazards including machinery and heights.  Based on vocational expert testimony, the ALJ found Meals could perform her past relevant work as a cashier and, thus, is not disabled under the Act.

## FACTS

Meals alleges she became disabled on August 4, 2009, when she was 52 years old.  She is not a high school graduate but did complete a GED.  Meals has worked as a cashier, custodian, and babysitter.

Meals complains of back and right hip pain.  She can only sit in one position for 30 minutes and stand in one position for 10 to 15 minutes.  She also suffers from abdominal and vaginal pain she believes is caused by scar tissue which formed after a hysterectomy and insertion of vaginal mesh in May 2009.  The mesh caused an infection in November 2009 which required the mesh to be surgically removed.  Lifting 20 pounds or more causes Meals to be

---

[2] A group of gynecological surgeries.

Page 5 - OPINION AND ORDER

incontinent, as well as pain in her back and hip. Meals also has migraine headaches which twice resulted in temporary paralysis of a day or so. At the time of the hearing, she only took over-the-counter Tylenol for the pain, although her 37 trips to the emergency room from September 2007 through September 2012 frequently resulted in the administration of pain medication by IV and, at times, a prescription for pain medication pills. Meals is unable to afford her medication prescribed for diabetes, hypertension, and migraines. She tries to control the diabetes with diet but her blood sugar swings high or low two or three times a week, causing shakiness.

To occupy her time, Meals reads, watches television, takes quarter-mile walks, and drives two or three times a week to visit her friend, Nancy Topper. After a walk, Meals needs to sit and rest for 15 or 20 minutes. She spends about half the day lying down. This relieves the pain and helps with fatigue caused by nightmares. Although Meals feels depressed at times, she denies having any mental health problems.

## DISCUSSION

I.    Meals' Credibility

Meals argues the ALJ did not provide clear and convincing reasons for rejecting her subjective symptom testimony.

I decline to accept the Commissioner's invitation to apply agency rules which do not require clear and convincing reasons to reject a claimant's testimony, when applying the rules would be contrary to Ninth Circuit precedent. Garrison v. Colvin, 759 F.3d 995, 1015 & n.18 (9th Cir. 2014) (rejecting the government's suggestion to apply a lesser standard than clear and convincing). The law in this Circuit is explained as follows:

> In assessing the credibility of a claimant's testimony regarding subjective pain or the intensity of symptoms, the ALJ engages in a two-step analysis. First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. If the claimant has presented such evidence, and there is no evidence of malingering, then the ALJ must give specific, clear and convincing reasons in order to reject the claimant's testimony about the severity of the symptoms.

Molina, 674 F.3d at 1112 (internal quotations and citations omitted).

The ALJ "must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." Holahan v. Massanari, 246 F.3d 1195, 1208 (9th Cir. 2001). General findings are insufficient to support an adverse credibility determination, and the ALJ must rely on substantial evidence. Id.

The ALJ found Meals' subjective symptom testimony was not credible because the objective medical evidence does not support the severity of Meals' allegations, her symptoms are well-controlled with conservative treatment, there is evidence Meals engaged in narcotic-seeking behavior, and her activities of daily living are not limited to the extent one would expect given Meals' complaints.

Meals disputes the ALJ's reason that the objective medical evidence does not support the severity of her alleged symptoms. She claims the ALJ cherry-picked the medical evidence and ignored evidence supporting her testimony.

The ALJ relied on the numerous CT scans of Meals' abdomen and pelvis which showed only a degenerative change in the lumbosacral region. No physician saw the need to order any other imaging of her back. A right hip x-ray in 2010 was normal. Five physical therapy sessions in early 2009 had improved Meals' pain level, strength, flexibility, and range of motion. Other

Page 7 - OPINION AND ORDER

than the gynecological problems causing the hysterectomy, and the later repair of the abscess caused by the mesh, Meals had over ten visits to the emergency room complaining of abdominal pain but the doctors could find no cause, in spite of many full work-ups including CT scans. The ALJ did not cherry-pick the medical record in reaching this conclusion. Moreover, the ALJ noted that no treating or examining physician placed restrictions on Meals. This is also supported by the record. Although Meals argues the ALJ did not use this as a reason to discredit her testimony, I disagree with her interpretation of the ALJ's opinion.

Although the ALJ cannot reject subjective pain testimony solely because it was not fully corroborated by objective medical evidence, medical evidence is still a relevant factor in determining the severity of the pain and its disabling effects. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001). The ALJ's conclusion that objective medical evidence does not support the severity of Meals' allegations is a specific, clear, and convincing reason to reject her testimony.

Meals contends the ALJ should not have discredited her for receiving only conservative treatment because her scant financial resources limited her choices.

A conservative course of treatment undermines a claimant's allegations of debilitating pain unless the claimant has a good reason for not getting more aggressive treatment. Carmickle v. Comm'r of Soc. Sec. Admin., 533 F.3d 1155, 1162 (9th Cir. 2008).

The record shows Meals delayed some medical procedures due to a lack of health insurance at the time, including having her abscess treated immediately, having a screening mammogram, and receiving physical therapy (although she had received physical therapy several years earlier). Importantly, there are no other instances in which doctors suggested more aggressive treatment to address Meals' pain issues. See, e.g., Tr 607 (watch symptoms over the

Page 8 - OPINION AND ORDER

next few months, consider physical therapy, surgical exploration is a last resort). Her treating doctors also did not control her pain long-term with narcotics, as would be expected for pain so severe it prevents a person from working and frequently sends them to the emergency room. I conclude Meals' conservative treatment is a clear and convincing reason to reject her testimony.

Meals disputes she ever engaged in narcotic-seeking behavior. She contends seeking pain relief does not undermine her credibility, and due to lack of insurance, she had to resort to emergency room visits for pain medication that would normally be prescribed by a primary care physician.

The ALJ relied on three specific instances in which Meals took a methadone pill from a friend and later asked for a prescription, received morphine in an emergency room with little sedating effect, and denied using Vicodin for two or three weeks but tested positive for opiates. Although I agree with Meals that the ALJ could have viewed three episodes in three years as immaterial, this record could also support the ALJ's conclusion that drug-seeking behavior erodes Meals' credibility. If the record supports multiple rational interpretations, the court must defer to the Commissioner's decision. Molina, 674 at 1111. Accordingly, I find drug-seeking behavior is another clear and convincing reason to reject Meals' testimony.

Meals argues her daily activities cited by the ALJ are not a convincing reason to reject her credibility because they are not contradicted by Meals' testimony and do not meet the threshold for transferable work skills. Meals had not completed a function report so the ALJ relied on the report of her friend, Nancy Topper. Topper reported Meals cooked whatever she wanted to eat, shopped, and did light cleaning, laundry, and a small amount of gardening, and could drive and use a computer, in addition to daily visits with friends which were sometimes in person. Meals

Page 9 - OPINION AND ORDER

also went to the emergency room in May 2012 for chest pain caused by helping her boyfriend with janitorial chores and sweeping.

An ALJ can base an adverse credibility determination on a claimant's daily activities if the activities contradict the claimant's other testimony or demonstrate the claimant's ability to perform transferable work skills.  Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007) (reading, watching television, and coloring in coloring books are activities so undemanding they do not bear a meaningful relationship to workplace activities).

Here, Topper reported that Meals was able to take care of herself, take care of her own household chores and shopping, have daily visits with friends, as well as garden, drive, and use a computer.  This is inconsistent with Meals' report that she spends half the day lying down.  Moreover, the daily activities demonstrate the ability to perform work skills.  Meals' activities go well beyond the claimant's activities in Orn, who only read, watched television, and colored.  This is another clear and convincing reason to discredit Meals.

In sum, the ALJ did not err.  He provided several specific, clear, and convincing reasons supported by the record to discredit Meals' subjective symptom testimony.

II.     Residual Functional Capacity

Meals claims the ALJ's residual functional capacity assessment is not supported by substantial evidence because the ALJ failed to include all of the functional limitations that are supported by the record.  In particular, Meals claims additional limitations are needed to address her reduced ability to lift, stand, and maintain pace without extra breaks.  To support the additional limitations, Meals relies on her testimony and the lay testimony of Topper.

As I concluded above, however, the ALJ did not err in rejecting the testimony of Meals and Topper. Thus, there is no evidence on which to base these additional limitations. An ALJ is not required to incorporate limitations that are not supported by substantial evidence. Osenbrock v. Apfel, 240 F.3d 1157, 1164-65 (9th Cir. 2001). The ALJ committed no error.

## CONCLUSION

The findings of the Commissioner are based upon substantial evidence in the record and the correct legal standards. For these reasons, the court affirms the decision of the Commissioner.

IT IS SO ORDERED.

Dated this _____24th_____ day of March, 2015.

                                                      /s/ Garr M. King
                                                      Garr M. King
                                                      United States District Judge